## BARKER vs. KNICKERBOCKER LIFE INSURANCE CO.

*Waiver of error. — Whether equity will cancel, for fraud, contract for personal services. — Counterclaim, or defense? — When incorrect instructions not fatal error. — Measure of damages. — New trial.*

1. Where, after his motion to dismiss the action for defective service of process has been denied, defendant answers and goes to trial, he waives the error in such refusal.

2. In an action for plaintiff's services as defendant's agent under a contract to employ him for a specified time at a fixed salary, the answer alleged that the contract (which was in writing) was procured by false and fraudulent representations, and asked that it be adjudged void and canceled. *Held,*

   (1) That it is doubtful whether equity will adjudge a contract for personal services to be canceled for fraud, the fraud being always a defense at law.

   (2) *Quære,* therefore, whether the facts alleged furnish a ground of counterclaim.

3. Such facts not being set up in the answer distinctly *as* a counterclaim, and defendant having gone into the proofs as though they were in issue (though there was no reply), it was not error to treat them merely as a *defense.*

4. The giving of instructions inapplicable to the facts in evidence is not error, if they do not mislead the jury.

5. Damages for a breach of contract for plaintiff's personal services may be reduced by the amount which he might have earned from other sources during the time of such breach; but the burden of showing that he might have made such earnings is upon the defendant.

6. The refusal of a new trial will not be regarded as error, on the ground that the verdict was contrary to the evidence, if any construction of the evidence which the jury were at liberty to give would sustain the verdict.

7. Where plaintiff was shown to have made to defendant, before his employment by the latter, a false representation as to the amount of business he had procured for a previous employer, but there was also evidence that he had submitted to defendant's agent the book of accounts on which this representation was based, and they had gone over it together, the jury would be at liberty to infer that defendant did not act on plaintiff's representation, but on the examination made by its own agent.

APPEAL from the Circuit Court for *Milwaukee* County.

Action upon a written contract,. dated May 6th, 1867, by which the plaintiff agreed with the defendant to serve it as general agent in building up the business of its western branch office, for five years, at a salary of $3,000 per annum, to be paid monthly, besides necessary traveling and hotel expenses. The complaint, which was filed in January, 1868, alleged that plaintiff had faithfully discharged his duties under said agreement, and that there was due to him on account of salary $750, and for traveling and hotel expenses, $159.55. Answer, 1. General denial of indebtedness. 2. That the contract sued upon was obtained by fraud and misrepresentation, in this: that the plaintiff, in order to induce the defendant to enter into it, falsely and fraudulently represented to the vice-president of said company (who executed the contract on its behalf), that he was an experienced, competent, well qualified, life insurance agent; that he could build up a large business for the defendant, and that, during the time he was general agent for the Connecticut Mutual Life Insurance Company, he had built up for it a business of over $300,000, annual premiums; which representations the plaintiff knew to be false; and the defendant entered into the contract in consequence of said representations, and in the belief that they were true. Prayer, that the contract be adjudged void, and be delivered up to be canceled. 3. That plaintiff did not discharge faithfully his duties under said contract; that he was incompetent to perform them; and that, in consequence of such failure to disharge his duties, and of such incompetency, the defendant dismissed him from its service on the 31st day of August, 1867. Before the answer was filed, defendant moved to set aside the service of the summons, upon the ground that the person upon whom the service had been made was not its agent; which motion was heard upon affidavits, and denied.

At the trial, the defendant objected to the introduction of any evidence, upon the ground that the answer set up a counterclaim, which, if true, would defeat the action, and that, as there was no reply, the counterclaim was admitted. The objection was overruled. In support of the second ground of defense, Mr. Johnson, the vice-president of the defendant company, and Mr. Lyman, its president, gave evidence tending to show that the plaintiff represented to Mr. Johnson that while he was general agent for the western states of the Connecticut Mutual Life Insurance company, he had built up a business for it of $300,000 annual premiums; and that the defendant company entered into the contract with him in reliance upon that representation. The president of the Connecticut Mutual Life Insurance company testified that the plaintiff was a general agent for said company from the 26th of August, 1862, to the 1st of September, 1864; that about the first of September, 1863, the plaintiff took into partnership with him in the business of his agency H. C. and C. C. Hodges; that, prior to the formation of said partnership, the premiums procured for the company by the plaintiff amounted to $63,857.52; and that the amount of annual premiums procured for the company by the copartnership was $130,973.15. C. C. Hodges testified that the first premium on all the policies procured and reported while the plaintiff was general agent, including the time of the continuance of said copartnership, was about $206,000; and that, in addition, there was reported upon renewal premiums and interest not to exceed $40,000. In regard to the representations which he made to Johnson, vice-president, the plaintiff testified: "I took a memorandum-book from my pocket, and showed him the business done for the Connecticut Mutual for ten months while I was general agent of the company; I showed him the figures; we went over the figures; I showed him what the old business was, and all the new

business, and the amount I had reported up to July, 1864. July and August were not reported up to that time. I showed him the list of the reports as rendered to the home office by my book-keeper, and I stated to him that these were copies of my reports at that time." The book referred to was received in evidence against the defendant's objection, and contained a schedule, in which, under the heading "new business," was set down the amount of premiums received for the Connecticut Mutual Life Insurance company for each month from August, 1863, to June, 1864, both inclusive, amounting to $161,083.57, and, under the heading "old business," receipts during same months, amounting to $32,356.92. Johnson, the vice-president, testified that the plaintiff did exhibit to him, before the contract was entered into, a book, and turned over the leaves to show that he had done an insurance business, but that witness did not examine it, and did not remember that plaintiff called his attention to a page in the book containing a summary of the business the plaintiff had done. The evidence upon the various questions in issue was voluminous, but will not be further stated here. Among the instructions given by the court, at the request of the plaintiff, were the following: "(1) Where an employee for a fixed period, at a salary for the period payable at intervals, is wrongfully discharged, he may, at his election, 1st. Sue at once for breach of contract. 2d. He may wait until the end of the period, and then sue for the breach. 3d. He may treat the contract as existing, and sue at each period of payment for the salary then due, subject to a reduction of what he has or might reasonably have earned during the time, opportunity being offered in his particular department of business ; and the proof is with the defendant. 4th. He may treat the contract as rescinded, and sue immediately on a *quantum meruit* for the services performed. (2) *Prima facie*, the employee will be entitled to his

full wages or salary for the full period sued for, but defendant, to reduce damages, may show what he has earned; and the onus is upon the defendant, if he desires to show what deduction should be made, and that he could have obtained employment." The court refused to give the following instructions, which were asked by the defendant's counsel. "(1) Voluntary idleness is regarded as a breach of moral duty, and if a party remains willfully idle for the purpose of charging another, the law regards his act as a fraud upon such other person. And, therefore, if the plaintiff was wrongfully discharged by the defendant before his time had expired, it was his duty to have sought employment elsewhere; and if you find he did not do so prior to bringing this action, but remained voluntary idle, he cannot recover more than nominal damages in this action. (2) If, after the plaintiff was discharged by the defendant, he did not, prior to the commencement of this action, seek employment with other parties, but remained idle voluntarily, for the purpose of charging the defendant for and with his salary under said contract, the plaintiff cannot recover. (3) The answer in this action sets up a counterclaim, and called for a reply by plaintiff if he would controvert the facts therein stated; and, no reply having been filed or served, the facts are admitted, and you should find for defendant. (4) If you find the plaintiff's theory of this case to be true, that he was wrongfully discharged by the defendant before the expiration of the term for which he was hired by the defendant, the law will not give him, as damages, the full amount of his salary as stipulated in the contract, but that amount less whatever the plaintiff could or might have earned in employment with other parties. If he could make as much or more in the service of other parties, he cannot recover any thing in this action; and if you find he did not offer to work elsewhere (as the plaintiff testified he did not)

after his discharge, and before the commencement of this action, you should find for the defendant. (5) After his discharge, he should have sought and obtained, if possible, employment, although for a less compensation than he was to receive from defendant; when, if defendant was liable at all, it should only be charged with the difference between the contract price and what the plaintiff was able to earn with other parties." The general charge given by the court contained the following: "The defendant's counsel desires me to instruct you that the plaintiff cannot recover in this case, for the reason that he remained idle up to the time of commencing this suit without making any effort to procure other employment. I must, however, decline so to do, or to give any of the instructions he has asked on this point. There is no proof in this case, that I am aware of, which shows affirmatively that he could have obtained employment. While the law does not allow willful idleness, yet it cannot be assumed that the plaintiff was liable to this charge, until it appears that he declined other employment, or that he might have obtained it by ordinary exertion. As the facts do not appear affirmatively in the testimony, I am compelled to instruct you that this part of the defendant's case fails for want of proper proof." Verdict in favor of plaintiff for $960.95; motion for a new trial overruled; and defendant appealed from the judgment.

*Carpenter & Cogswell* (with *N. S. Murphey*, of counsel), for appellant:

The answer sets up a counterclaim to the whole subject in controversy, which, not having been replied to, is admitted by the plaintiff, and no proof should have been received. *Jarvis v. Peck*, 19 Wis. 74; *Butler v. Titus*, 13 id. 429; *Conway v. Smith*, id. 125–139; *Atwater v. Schenck*, 9 id. 160; *Shubart v. Harteau*, 34 Barb. 447; Van Santv. Pl. 554–557. 2. The court erred in refusing to give the instructions asked by the defend-

ant, numbered above as (1), (2), (3), (4) and (5). Idleness is in itself a breach of moral obligation, which the law had rather punish than countenance. 21 Wend. 457; 33 How. Pr. 416; 3 Wis. 557; 7 id. 355; 1 Denio, 605. The court also erred in instructing the jury that there was no proof that the plaintiff could have obtained employment. This was a question for the jury. The third subdivision of the instruction given at the instance of the plaintiff, numbered above as (1), was erroneous in the declaration that the plaintiff could recover for the whole amount accruing after his discharge, no "opportunity being offered in his particular department of business" for other employment. He should have sought it, rather than wait for it to be "offered." *Huntington v. Lake Champlain R. R. Co.*, 33 How. Pr. 419.

*Geo. B. Goodwin*, for respondent.

PAINE, J. The defendant moved in the court below to dismiss the action for insufficiency in the service of the process. This motion having been overruled, it answered and went to trial on the merits. This must be held a waiver of the error, if any, in overruling the motion. If a party wishes to stand upon the objection that he is not in court, he must keep out, except for the purpose of raising that question. It would give him an unjust advantage, to allow him, after such a motion had been ruled against him, to go into court for all the purposes of a trial on the merits, in which, if he obtained a judgment, it would be valid in his favor, but in which, if the other party should obtain a judgment, and the service of process had been defective, he could inevitably reverse it, upon the ground that he had never been got into court at all. *Lowe v. Stringham*, 14 Wis. 225.

The defendant insists that the answer sets up a counterclaim, and that, as there was no reply, it was to be taken as true, and the defendant entitled to judgment

upon it. The action is to recover for services of the plaintiff as agent of the defendant, under a contract to employ him for five years at a salary of three thousand dollars per annum, payable monthly, besides his traveling and hotel expenses. The answer sets up that the alleged contract was in writing, and was procured by the false and fraudulent representations of the plaintiff, in regard to his efficiency as an insurance agent, and as to facts tending to show such efficiency. The answer does not profess to state this as a counterclaim. It states it as a defense only. But the prayer for judgment asks that the contract be adjudged void, and be delivered up and canceled.

There is no doubt that these allegations show a proper defense. There is some doubt whether they constitute a proper counterclaim. If the plaintiffs had brought no suit on the contract, there does not seem any substantial reason why a court of equity should have interposed its powers to adjudge it void, and cause it to be delivered up and canceled. Inasmuch as the fraud would always constitute a complete defense at law, and the contract was of such a nature that no transfer could change the rights of the parties, it would seem unnecessary to sustain a separate suit by the company, in order to have a fraudulent contract for mere personal services canceled.

But however this may be, the question has been determined by this court. In *McConihe v. Hollister* (19 Wis. 269), which was an action to foreclose a mortgage, the answer alleged, without stating it in form as a counterclaim, that the note and mortgage were procured by fraud, and asked to have them delivered up and canceled. But it was held that, as the facts alleged constituted properly a defense, they would be so regarded, not being stated in form as a counterclaim, although they might have been sufficient for one. This is a still clearer case for holding that rule, for it is much more

doubtful whether a separate action could be maintained to cancel a fraudulent contract for mere personal services, than it is whether it could be done to cancel a fraudulent note and mortgage.

After this answer was served, the defendant's counsel treated its allegations as being at issue, by taking testimony on commission to substantiate them. And we are satisfied that the court below properly held it to be a defense.

It may be that some portions of the instructions asked by the plaintiff's counsel, and given, may have been abstract and inapplicable to any question which the jury had to determine. The one including all the various remedies which the plaintiff might elect, on a breach of the contract by the defendant, seems to have been of this character. The only question in this case was, whether he had a right to the one which he did elect. But there was nothing in this that seems to have been capable of misleading the jury in respect to the questions they had to determine, which were submitted to them very fairly for both sides.

The instructions asked by the defendant, which sought to authorize the jury to reduce the plaintiff's damages, if they should find in his favor, by the amount which he might have earned elsewhere, after his wrongful discharge, were properly refused. The rule in such cases is, that although the damages may be so reduced, yet the burden is on the defendant to show affirmatively that the plaintiff might have had employment and compensation elsewhere. Here the defendant offered no such proof, and there was therefore no question upon that subject to submit to the jury.

It is objected that the verdict was against the evidence, and that therefore the motion for a new trial ought to have been granted. This objection never prevails in this court, after such a motion has been overruled in the court below, where there is any legitimate construction

of the evidence by which the verdict can be sustained. The only serious question which the objection presents is, whether there was any such conflict of evidence as to the fact that the plaintiff represented that he had built up a business of over $300,000 annual premiums for the Connecticut Mutual Life Insurance Company, and that this was materially untrue, as would enable us to sustain the verdict. Those certainly were matters material to the contract, and constituted the very essence of the alleged fraud.

If we consider only the general statements made by the witnesses as to the representations, it would be perhaps difficult to sustain the verdict upon this point. But there is one feature of the testimony which the jury were entitled to credit, and which was sufficient to sustain a verdict by which they avoided the conclusion of any fraud in these representations. The plaintiff stated that, prior to the time of his employment, during the negotiations, he exhibited to Johnson, the general agent who employed him, a memorandum book showing a detailed statement of the old and new business of ten months of the year referred to, in which he had built up the business for the Connecticut company. He says they looked over all the figures in this book together, and he explained every thing to Johnson. Now these are the very figures on which the defendant relies to show the falsity of the representation, in respect to having built up a business of over $300,000 annual premiums. And the jury were warranted in believing, that though such a representation was made, it could not have been relied on by Johnson, but that he rather entered into the contract upon the faith of the actual figures which were submitted to him. In view of the effect which the jury were warranted in giving to this fact, that the figures showing the actual state of that business were submitted and fully explained to Johnson, I should not feel authorized to say that there was no legitimate con-

struction of the evidence by which the verdict could be supported. The judgment must be affirmed.

*By the Court.* — Judgment affirmed.