Norris vs. Cargill and others.

---

Norris vs. Cargill and others.

*February 26 — March 13, 1883.*

Evidence: Master and Servant. *(1, 2) Cross examination of party. (3) Implied undertaking as to possession of skill: immaterial error. (4) Admissions, in pleading afterwards amended. (5) Instructions as to credibility of witnesses. (6) Presumption as to competency of book keeper from failure to produce books.*

| | |
|---|---|
| 57 | 251 |
| 88 | 549 |
| 57 | 251 |
| 98 | 408 |
| 57 | 251 |
| 107 | 295 |

1. When the witness is a party to the action the court may, probably, *in its discretion,* allow a broader range of cross examination than in ordinary cases; but such latitude is not a *right* of the adverse party.

2. So, in an action for the breach of a contract of employment by the discharge of the plaintiff, the incompetency and disobedience of the plaintiff, and the fact that after his discharge he might have earned more than he admits he did, are matters purely defensive, and while it may not be error to permit them to be shown on the cross examination of the plaintiff, it is not error to refuse such permission.

3. One who accepts employment to perform skilled labor impliedly undertakes that he possesses the requisite skill, and in an action for a breach of the contract of employment evidence that he represented that he possessed such skill is immaterial, and its exclusion is not error.

4. The unqualified admission of a fact in a pleading, though afterwards limited and qualified by amendment, is competent evidence of such fact.

5. After stating some of the recognized tests for determining the credibility of witnesses and the relative weight to be given to conflicting testimony, the court instructed the jury that if they were unable to reconcile apparently conflicting testimony, they must determine what portion of it was true and what false by the application of the tests given, *and all other tests within their skill and power. Held,* that such instruction was not erroneous as giving the jury too much latitude in determining the credibility of testimony.

6. In an action by a book-keeper against his employers for his unlawful discharge, the defendants having justified the discharge on the ground that the plaintiff was incompetent, it was not error to instruct the jury that the defendants' failure to produce the books kept by the plaintiff while in their service might be considered as tending to show that the plaintiff was competent, and that, although the plaintiff might have compelled the production of such books, he was not bound to do so, and his failure to do so raised no presumption against him.

APPEAL from the Circuit Court for *Brown* County.

The plaintiff entered the employment of the defendants (who were partners) as their book-keeper, May 17, 1880, and was by them discharged from such employment, June 29, 1880. The agreed consideration for such services was $75 per month, and the plaintiff was paid at that rate to the date of his discharge. He claims that the defendants employed him to serve until January 1, 1881, and that they discharged him wrongfully and without any just cause. This action is to recover damages for the alleged breach of such contract of employment. It is stated in the complaint that between the date of his discharge and January 1, 1881, the plaintiff was only able to earn $163. Judgment is demanded for

$287, that being the contract price for six months, less the $163. The original answer admitted that the defendants employed the plaintiff as their book-keeper and accountant "for the period named in the complaint and at the rate per month therein alléged," and it is charged therein that "he was inaccurate, careless, neglectful, and unfaithful to his assumed and promised duties as such book-keeper and accountant, and was and is wholly incompetent to discharge the duties of a competent book-keeper and accountant," for which reasons the defendants discharged him.

The answer was afterwards amended by inserting therein, immediately after the words first above quoted, the following: "On the express agreement and understanding then and there made, by and between the said plaintiff and these defendants, that such employment might be terminated at the pleasure of said defendants, if they were not satisfied with the conduct or skill or work performed by said plaintiff; or, in other words, that the said employment was to be to the satisfaction of the said defendants, and not otherwise."

There was a jury trial, which resulted in a verdict and judgment for the plaintiff for the amount of his claim. A motion for a new trial was made before judgment and denied. The errors assigned all relate to the proceedings on the trial, and such proceedings are stated in the opinion. The defendants appealed from the judgment.

For the appellant there was a brief by *Hudd & Wigman*, and oral argument by *Mr. Hudd*.

For the respondent there was a brief by *Hastings & Greene*, and oral argument by *Mr. Hastings*. To the point that the burden of proof was on the defendants to show that the plaintiff could have obtained employment, they cited: Wood on M. & S., 238, 239, sec. 125; *Barker v. Ins. Co.*, 24 Wis., 638; *Costigan v. Railroad Co.*, 2 Denio, 609; *Danley v. Williams*, 16 Wis., 581; *Wood v. Schettler*, 23 id.,

501; *Howard v. Daly*, 61 N. Y., 362; *Sherman v. Trans. Co.*, 31 Vt., 162; *Gillis v. Space*, 63 Barb., 177.

Lyon, J.   1. At the close of plaintiff's testimony the defendants moved for a nonsuit on the ground that the evidence failed to show or tend to show a hiring for any specific time. The motion was denied.   Before the motion was made, the plaintiff had testified to a conversation with one of the defendants when the contract of hiring was made.   On his cross examination he thus detailed that conversation: "I asked him how much he could give.   He said, $75 a month. I thought a moment.   Says I, 'All right; I will take $75 a month, but I will not agree beyond the 1st of January.' He says, 'All right; we will call it $75 a month until the 1st of January, and then we may make a new bargain.'" This testimony tended to show a hiring until January 1st, and was sufficient, at least, to send that question to the jury. Moreover, after the motion was denied, additional evidence was given tending to prove the same proposition.   The motion for a nonsuit on the ground stated was, therefore, properly denied.

2. On cross examination the following questions were put to the plaintiff: "You represented to *Mr. Van Valkenburgh* (one of the defendants) that you were a book-keeper and competent to keep books, did you not?   What business were you engaged in after you left the employ of the defendants?" Counsel for defendants further offered to show by the witness (the plaintiff) that he refused to obey the proper and lawful orders of the defendants in the matter of keeping the books and in the conduct of his business, and that there was no other reason for his discharge.   The court sustained objections to the questions and offer on the ground that the same were not proper cross examination.   The first of the above questions was quite immaterial.   When the plaintiff accepted employment to perform services for the defendants,

requiring skill on his part, he impliedly undertook that he possessed such skill, and it is of no importance whether he represented that he possessed it or said nothing about it. Had the question been allowed, it would have been of no consequence whether it was answered in the affirmative or negative. Neither the obligations of the plaintiff nor the rights of the defendants would have been affected by the answer. Hence, if erroneously rejected, it is not an error that will work a reversal of the judgment.

Had the witness not been the plaintiff there can be no doubt that both questions and the offer were properly rejected as not being proper cross examination, for the reason that the witness had not been examined in chief on those subjects. True, he had testified to a conversation with the defendant *Van Valkenburgh*, and the defendants were entitled to the whole of that conversation; but the first question (besides being immaterial) is general and not directed to that conversation. The other question and the offer call for purely defensive testimony on subjects concerning which the witness had not testified. The second question related to plaintiff's employment after he was discharged, and, if material at all, it was so because the answer might have tended to show that the plaintiff earned, or could have earned, more than he admits in the complaint This is matter of defense *(Barker v. Ins. Co.,* 24 Wis., 630) as is also the alleged incompetency of the plaintiff. We do not think the admission in the complaint of the amount earned after his discharge can operate to change the burden of proof on that subject to the plaintiff, or affect the rules governing his cross examination as a witness. Probably the fact that the witness was a party to the action would justify the court in its discretion in allowing a broader range of cross examination than would be allowed were the witness not a party. *Knapp v. Schneider,* 24 Wis., 70. But that is not a right of the adverse party, and ordinarily the rules of cross examina-

tion are the same whether the witness be a party or not. *Howland v. Jencks*, 7 Wis., 57. While, therefore, it might not have been error to allow the proposed cross examination, it certainly was not error to disallow it.

3. The plaintiff was allowed, against objection, to read to the jury the original answer. That answer was verified by one of the defendants, and contained an unqualified admission that they employed the plaintiff to serve as their book-keeper until January 1, 1881. There can be no doubt that the admission in the answer was competent evidence to go to the jury for what it was worth, on the question as to what were the terms of the contract between the parties.

4. The remaining errors assigned are based upon exceptions to the instructions given by the court to the jury. The charge is quite lengthy, and it is impracticable to quote here the passage upon which errors are assigned. A general statement of those portions must suffice. The question as to what were the terms of the contract of hiring was clearly and fairly submitted to the jury. They were instructed that if the contract was for no specific time, or being for a specific time if the defendants reserved the right to discharge the plaintiff when dissatisfied with him, the plaintiff could not recover. But if they found that the plaintiff was employed to serve until January 1, 1881, and the defendants did not reserve such right, then if the plaintiff was a competent book-keeper and properly performed his duty, the defendants had no right to discharge him when they did, and the plaintiff could recover. In that event the measure of damages was stated to be the contract wages — that is $75 per month — from June 29, 1880, to January 1, 1881, less the amount the plaintiff might reasonably have earned elsewhere during that time. Thus far the charge states the law correctly, and is not assailed.

The jury were further instructed that, finding the contract of hiring to be as claimed by the plaintiff, it was the duty

Norris vs. Cargill and others.

of the plaintiff "faithfully to perform his labor, and do it promptly and correctly, and also to be respectful in his communications, written and verbal, with the customers and correspondents of the defendants;" and if he failed in these respects, or was incompetent to perform his duties properly, the defendants had the right to discharge him, and there could be no recovery in the action. This, also, was undoubtedly a correct statement of the law. The learned circuit judge commented to some extent on the subject of the degree of competency required of the plaintiff, but we find nothing in his remarks which could mislead the jury or prejudice the defendants. It was left to them to find from the evidence whether the plaintiff was or was not a competent book-keeper, and whether he did or did not perform his duty with reasonable skill and fidelity. This is sufficient.

5. The learned circuit judge stated to the jury some of the recognized tests for determining the credibility of witnesses, and the relative weight to be given to conflicting testimony. He then told the jury that if they were unable to reconcile apparently conflicting testimony, they must determine what portion of it was true and what false by the application of the tests given, *and all other tests within their skill and power.* It is claimed that the last portion of the instruction gave the jury too much latitude in determining the credibility of witnesses. We think otherwise. The jury are the sole judges in that matter. All the court can do is to aid them by laying down the leading rules by which credibility should be tested when the testimony is in conflict. This was done here, and presumably the jury gave due weight to the instructions and faithfully applied the rules enunciated by the court. But if, in the exercise of sound, intelligent judgment, the jury were conscious of other tests of credibility not enunciated by the court, it was manifestly their duty to apply the same otherwise the jury would not be the exclusive judges

of the credibility of witnesses and the truth or falsity of conflicting testimony.

6. The defendants failed to produce on the trial any of their account-books which the plaintiff had kept while in their service. The jury were instructed that they were at liberty to consider such failure as tending to show that the plaintiff was competent, and kept such books in a proper manner; and, further, that although the plaintiff might have compelled the production of the books, he was not bound to do so, and his failure to compel their production in court raised no presumption against him. We discover no error in these instructions. This disposes of all the material errors assigned for a reversal of the judgment. We conclude that none of them are well assigned.

*By the Court.*—The judgment of the circuit court is affirmed.