McNair vs. Rewey.

McNair vs. Rewey.

*December 22, 1884 — January 13, 1885.*

VOLUNTARY ASSIGNMENT: PARTNERSHIP: EVIDENCE. *(1) Assignment held to be by partnership. (2) Reservation of exempt property. (3) Form of bond of assignee. (4) Cross-examination. (5, 6) Evidence of existence of firm and of sales. (7) Concealment of partnership: Sales to individual partner.*

| 62 | 167 |
|----|-----|
| 87 | 133 |
| 62 | 167 |
| 88 | 549 |
| 62 | 167 |
| 97 | 665 |

1. An assignment by " J. T. H. and R. H., copartners under the firm name and style of J. T. H. & Co., parties of the first part," of all the property " belonging to the said parties of the first part, or in which they have any right or interest," etc., in which the assignee is directed to make payments " to the creditors of the said parties of the first part," etc., is an assignment by the firm for the benefit of firm creditors.

2. In an assignment of partnership property by the firm a reservation of such property as is " exempt from levy and sale under execution under the laws of the state," is inoperative because the firm

as such is not entitled to any exemptions; and such reservation does not, therefore, render the assignment void for uncertainty.

3. The bond of an assignee running to "A. C. M., clerk of the circuit court," etc., is in substantial compliance with sec. 1694, R. S. See *Bates v. Simmons, ante,* p. 69.

4. It is discretionary with the court to what extent it will permit the plaintiff's witnesses to be cross-examined as to matters purely defensive.

5. Evidence of the existence of judgments against one member of an alleged firm, has no bearing upon the question of the existence of the firm.

6. Evidence of instructions to a traveling agent not to solicit any trade from a certain person nor from any firm of which he was a member, is not admissible to show that no sales were in fact made to such a firm.

7. Where goods are purchased by one partner upon his individual credit but for the benefit of a firm the existence of which he conceals, the firm obtains a valid title to the goods and the vendors are not defrauded or injured. They have their remedy against the firm assets, and against the partner making the purchase the same as if there had been no firm.

APPEAL from the Circuit Court for *Grant* County.

The case is thus stated by Mr. Justice CASSODAY:

"January 10, 1883, J. T. Hicks and Robert Hicks, copartners under the firm name and style of J. T. Hicks & Co., made an assignment under ch. 80, R. S., to the plaintiff, and to his successors in trust, of all and singular the lands, goods, chattels, accounts, notes, bonds, bills, debts, choses in action, claims, demands, property, and effects, of every kind and description, real, personal, and mixed, belonging to them, or in which they had any right or interest, or which were held by any person or persons for them or in trust for them (except such as were exempt from levy and sale on execution under the laws of this state), the same being more fully and particularly enumerated and described in a verified inventory to be filed. On the same day, the assignee consented to take upon himself the faithful discharge of the several trusts specified in the assignment (which was at the

same time properly certified to), and gave the requisite bond, and all of which were filed with the clerk on the same day. Within ten days after the execution of the assignment, the requisite inventory of the assets and list of the creditors were made, verified, certified, and filed, as required.

"January 20, 1883, the defendant, as sheriff, claiming to act under and by virtue of three several writs of attachment against the property of J. T. Hicks, personally, each in favor of persons claiming to be creditors of said J. T. Hicks, personally, seized .the property so assigned, and forcibly took the same from the possession of the plaintiff, and refused to return the same after demand being duly made. March 29, 1883, this action was commenced to recover the value of the goods so taken. The defendant answered and justified as sheriff under such attachments.

"On the trial the defendant testified to having seized the goods as such sheriff on such attachments, and to having realized from them $2,181.80; but none of the records or papers in the attachment suits seem to have been put in evidence. The jury returned a verdict for the plaintiff, and assessed his damages at $2,868.72, and answered two special questions submitted to them, to the effect that all the goods, notes, and accounts received by the plaintiff, as assignee, and which the sheriff attached, were the property of the firm of J. T. Hicks & Co., and were not the property of J. T. Hicks, individually. From the judgment entered upon that verdict the defendant appeals."

For the appellant there were briefs by *Bushnell & Watkins*, and oral argument by *Mr. Bushnell*.

For the respondent there was a brief by *Clark & Mills*, and oral argument by *Mr. Clark*.

CASSODAY, J. From the repeated decisions of this court we must hold that the assignment was made by the firm of J. T. Hicks & Co., and transferred to the assignee the prop-

erty of the firm for the benefit of the firm creditors, and was not an assignment of the individual property of either of the partners, nor for the benefit of the creditors of either of the individual members of the firm. *First Nat. Bank of Madison v. Hackett*, 61 Wis. 335; *Goll v. Hubbell*, 61 Wis. 293; *Smith v. Bowen*, 61 Wis. 258. This being so, the question as to the effect of the exemption clause in the assignment is disposed of by the same decisions. The bond running to "A. C. Morse, clerk of the circuit court of the county of Grant, in the state of Wisconsin, and to his successors in office," was a substantial compliance with sec. 1694, R. S., as we have just held in *Bates v. Simmons, ante*, p. 69. These are the only objections made to the form or execution of the assignment.

In view of the issues, we do not think there was any abuse of discretion in not allowing the defendant's counsel to further cross-examine the plaintiff's witness, J. T. Hicks, as to the filling of the writing in the blanks in the receipts in the receipt-book kept by his firm. It is said to contain ninety-nine different receipts, but neither the book nor such receipts had been offered in evidence. The witness had already been recross-examined in relation to substantially all the receipts he had specifically testified about upon his redirect examination. Counsel suggested no material object to be attained by such further cross-examination. The witness had testified to the existence of the partnership as a matter of fact. His reference to receipts given by some of the attaching creditors was obviously to show that they knew the fact of partnership. There is nothing to indicate that the further cross-examination proposed was in relation to such receipts. All other receipts had but a remote bearing at most. Possibly they might have indicated a course of dealing from which the non-existence of the partnership might have been inferred. But that was a matter purely defensive. Being purely defensive, it was discretionary with the court

McNair vs. Rewey.

to allow the cross-examination to continue further or terminate it there. *Norris v. Cargill*, 57 Wis. 251. In no view do we discover any abuse of discretion in the ruling made.

One of the alleged partners, Robert Hicks, was sworn in behalf of the plaintiff. On cross-examination he had testified, in effect, that he supposed there were some judgments against him, but did not know — never examined; did not know there was between July and May, 1871. He was then asked, in effect, if there were not four several judgments described against him, and still unpaid. The question was excluded as immaterial and not proper cross-examination, and this is assigned as error. In support of this contention, it is urged that the testimony sought to be elicited would have tended to disprove the existence of the partnership, or, failing in that, it would tend to prove that the existence of the partnership was kept secret, with the view of defrauding persons dealing with J. T. Hicks, the ostensible owner of the business. We are unable to discover how such testimony could have any bearing upon either proposition. Certainly, it had no bearing upon the question of the existence of the partnership. Since partnership property must be applied to the payment of partnership debts, to the exclusion of the creditors of the individual members of the firm, and the creditors of the latter are first to be paid out of the separate effects of their debtor, before the partnership creditors are entitled to anything from individual assets (*Lord v. Devendorf*, 54 Wis. 495), and since the goods here purchased of the attaching creditors were claimed by the plaintiff to have been so purchased by J. T. Hicks for the firm, it is difficult to see how such attaching creditors could be defrauded or injured by the existence of the firm, or the fact that the other member of the firm owed individual debts. Such attaching creditors not only had their remedy against the firm assets, but, upon exhausting them, against J. T. Hicks, the same as though there had been no firm. The

existence of the firm, therefore, could not have the effect of lessening the security of the attaching creditors, and possibly might have increased it. The real purpose of attaching the goods as the individual property of J. T. Hicks, seems to have been to exclude other firm creditors from any participation in the firm assets; for the goods purchased of such other creditors evidently went into the same business as the goods purchased of the attaching creditors. The testimony was also properly excluded on another ground. The question asked was not proper cross-examination, as the witness had not testified on that subject on his direct examination.

The defendant sought to prove by Mr. Wood, the " credit man " of one of the attaching creditors, in effect, that he instructed their traveling man, Harris, not to solicit any trade from Robert Hicks, nor any firm of which he was a member. Such instruction clearly had no bearing upon the question of partnership, nor as to whether such creditors had, in fact, sold the goods to the firm or to J. T. Hicks personally, nor any other issue involved in the case. The court very properly excluded the question. The same is true with respect to the question put by the defendant's counsel to his witness, Harris, as to inquiries made by him of his house in relation to giving credit to Hicks.

From a careful examination of the record we are clearly of the opinion that the verdict was sustained by the evidence, and hence the motion to set it aside as contrary to the evidence was properly overruled.

The counsel for the defendant has taken exceptions to two specific portions of the charge, on the ground that, although they were both correct, " as abstract propositions of law," yet that " there was no testimony whatever in this case on which to found either of them," and hence that they misled the jury. It is enough to say that we agree with counsel that each of the propositions of law referred to was, in the

abstract, substantially correct, but differ with him in thinking that there was no testimony in this case which made each of them applicable. We think there was such testimony.

Error is assigned because the court refused to give the following instruction requested: "If J. T. Hicks falsely represented himself to be doing business in his own name, for the purpose of purchasing and obtaining goods on credit for the firm of J. T. Hicks & Co., and by so doing did so purchase and obtain goods for the firm of J. T. Hicks & Co., which the latter could not have purchased and obtained upon their own credit, then J. T. Hicks & Co. did not obtain a valid title to the goods so purchased and obtained." We are not aware of any case, and none have been cited, where a person ostensibly doing business in his own name, but having a dormant partner, has been held to have committed a fraud in purchasing goods for such business, merely because he did not, in fact, disclose the partnership. As already shown in another part of this opinion, no injury could result from such want of knowledge to one selling goods for such business to such ostensible proprietor. Had J. T. Hicks purchased the goods for himself, personally, and retained them as his own, on the representations that he was the sole owner of the business carried on, then a different question would have been presented. A fraud may be committed on the creditors of an insolvent firm by a known partner secretly retiring or withdrawing from the firm. 1 Lindl. Partn. 735, 736. But that proposition is the direct antipode to the one here presented. Here the jury found that the partnership existed. This being so, Robert was, necessarily, either known to be such partner, or else it was a secret with the partners. In either event, they could make an assignment binding upon those who had sold goods for the business, even though the negotiations were with a single member of the firm. The whole question seems to have been fully and fairly submitted to the jury. The court charged them, among other

things, in effect, that the assignment did not carry with it any goods belonging to J. T. Hicks individually; that if he was the real party doing the business, and Robert was included to secure some private gain or benefit to themselves, then they must find for the defendant; that the plaintiff had no right to the possession of any property belonging to J. T. Hicks individually; and that if any of the property in question was of that kind, then for such property the plaintiff could not recover. It seems to us that the instruction in question was properly refused. Had it been given, it would, under all the facts and circumstances of the case, in our opinion, have misled the jury.

*By the Court.* — The judgment of the circuit court is affirmed.