## J. H. ODENEAL ET AL. *v.* W. M. HENRY.

1. CONTRACT OF SERVICE. *Discharge of employe. Other employment. Burden of
   proof.*

   In an action by an employe wrongfully discharged, to recover of his em-
   ployer, as damages, the balance of the contract-price for the unexpired
   term of his employment, the burden of proof is on the defendant, if he
   defends upon the ground that plaintiff had, or could have had, other
   employment, and neglected to secure it.

2. CONTRACT. *Written proposal and acceptance. Oral evidence.*

   Where plaintiff's letter to defendant proposing to enter his service on cer-
   tain clearly specified terms, and the defendant's letter in reply accepting
   the offer, are in evidence and not disputed, it is error to refuse an in-
   struction that these constitute the contract, notwithstanding plaintiff has
   sworn that the contract was an oral one, made prior to the date of the
   letters.

3. DISCHARGE OF EMPLOYE. *Reasons assigned. Instruction.*

   Where defendant, having previously expressed dissatisfaction with plaint-
   iff as manager of his dairy farm, wrote him a letter discharging him,
   assigning some reasons, but also expressing generally his dissatisfaction,
   and refusing to go into details, and, when sued, produced evidence to
   justify the discharge on other grounds, an instruction is improper which

---

---

tells the jury that the reasons stated in the letter do not justify the discharge. Thus to single out and pronounce upon the evidence disconnected from other facts, is erroneous, as being calculated to mislead the jury.

4. SAME. *Reasons for discharge. Knowledge of employer.*

If at the time of the discharge of an employe, sufficient grounds therefor actually existed, the employer is not liable in damages therefor, although he did not know of them at the time of the discharge, and may have assigned other reasons.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

Appellee, Henry, brought this action December 9, 1891, against J. H. Odeneal and Anna M. Odeneal, claiming $1,-331.50 damages for the non-performance of an alleged contract of hiring. The declaration alleged that on the twenty-fourth day of December, 1889, defendants contracted with plaintiff to take charge of and manage their stock-farm and dairy, near Jackson, for a period of one year, at a monthly salary of $60, to be paid in money, and, in addition, that they were to be allowed the use of a house and garden, and such dairy products as he might need for himself and family—these perquisites alleged by plaintiff to be worth $40 per month; that in November, 1890, this contract was renewed by defendants for another year, beginning December 24, 1890; that plaintiff continued faithfully to discharge his duties until about March 24, 1891, when he was discharged without cause; that he made reasonable effort to obtain employment about Jackson and elsewhere, without success, until about December 1, 1891, when he obtained unremunerative employment. Plaintiff claims as damages the full amount of salary and alleged value of the perquisites during the two years, less the amounts received.

In view of the opinion, it is not necessary to set out the course of the pleadings, or to advert to the many points having reference to the court's rulings thereon.

On the trial, the plaintiff testified that the contract, as mentioned in the declaration, was orally made with defendant, J. H. Odeneal; that he and Odeneal discussed the whole matter, and that plaintiff made him a verbal proposition, which Odeneal, after consideration for a few days, accepted by a letter, dated December 12, 1889. It was contended by defendants that the contract was evidenced by a letter from Henry to Odeneal, dated December 11, 1889, and the above-mentioned letter of Odeneal in reply. The letters were produced, and their identity not questioned. The letter to Odeneal was as follows:

"OSBORN, MISS., December 11, 1889.

"*Mr. J. H. Odeneal, Jackson, Miss.:*

"DEAR SIR—Yours of tenth has been received and carefully noted, and, in reply, I would say that I could not accept of your proposition. I am willing to take $600, and buy or pay for the use of the dairy. The expense of moving my furniture will be very heavy to start with. I will give my undivided attention to the business for the above-named price. You will please let me hear from you by return mail, as there are others waiting on me, but would prefer living with you.                    Respectfully,

"   W. M. HENRY."

Odeneal received this on the day following, and at once answered, under date of December 12, 1891, accepting his proposition, in the following words: "Yours of eleventh inst. is received. I will accept your proposition."

After the introduction of these letters, which contradicted the testimony of plaintiff, that the contract was verbal and its terms different from those mentioned in the letters, he was asked if he had any explanation to offer about the matter, and he replied in the negative, and the contradiction was not explained.

There was evidence that plaintiff, after being discharged,

sought other employment, in Jackson, without success, and, in a few weeks, moved to another state; but what efforts he there made to secure employment, and when he did, in fact, find work, are not shown by any evidence.

Early in the year 1891 Odeneal became dissatisfied with Henry's management, and so informed him, but nothing definite was done until February 17, 1891, when Odeneal wrote plaintiff a letter, the material parts of which were that he was not satisfied with plaintiff's management; that he disliked to make a change at that season, but that plaintiff ought to be looking out for other business; that he had confidence in plaintiff's integrity, and felt satisfied he had done the best he could, but that the results were very unsatisfactory, and it was necessary to cut down expenses, and get a cheaper manager.

Shortly after the receipt of this letter, and as a consequence of it, Henry left the farm, another manager having been employed.

The evidence for plaintiff tended to show that he had attended to all his duties faithfully, and that there was no cause for his discharge; but there was evidence for defendants which tended to show that he was inattentive and unkind to the stock on the farm, at times maltreating them; and also that he had, about the time of his discharge, altered certain entries and made erasures of certain figures on his cash-book, the effect of which would be to falsify his account of the receipts from the farm, and diminish the balance due defendants.

Among other instructions given for plaintiff, were the following:

"2. If the jury believe from the evidence that the letter written by the plaintiff to defendant, dated December 11, 1889, and the letter from Odeneal to plaintiff, dated December 12, 1889, constituted the contract between the parties, then it was a contract from year to year, or by the year.

"5. If the jury believe from the evidence that the defend-

ant employed plaintiff by the year from December 24, 1890, and that the plaintiff was discharged before the expiration of the year for the reasons set forth in the letter of J. H. Odeneal to the plaintiff, dated February 17, 1891, then the jury is instructed that these reasons do not constitute good and sufficient cause for discharging the plaintiff."

Defendants asked for an instruction in these words:

"3. The contract between the plaintiff and defendants did not entitle plaintiff to $60 a month, nor to the use, free of charge, for his family, of the dairy products of the farm."

But the court refused it in this form, and gave it after prefacing it with the words: "If the jury believe from the evidence that the letters between the parties of the eleventh and twelfth of December embody the contract."

The court refused the eighth instruction asked by defendants, which was to the effect that the above-mentioned two letters constituted the contract, presumably basing such refusal on the fact that plaintiff had testified that the contract was a verbal one, and that this raised a question of fact for the jury.

The seventh instruction, as asked by defendants, was as follows:

"7. If the jury believe from the evidence that good and sufficient reasons existed for discharging plaintiff, and that there were such reasons, independent of those mentioned in the letter of February 17, 1891, then the jury may consider the same as constituting cause for discharging plaintiff, if the cause was sufficient."

The court refused this instruction as asked, but modified it by making the first clause of it to read as follows: "If the jury believe from the evidence that *the defendant had* good and sufficient reasons *which* existed," etc.

The foregoing statement will suffice to illustrate the assignments of error passed upon in the opinion. There was a verdict for $442.28. Judgment accordingly, and, after motion for a new trial overruled, defendants appealed.

*Brame & Alexander,* for appellants.

1. Whatever the rule may be in other states, it is well settled in this state, that in seeking to recover damages in a case like this, the plaintiff must show diligence in looking for other employment. It is a suit for damages, and it devolves on plaintiff to show his damages. *Hunt* v. *Crane,* 33 Miss., 669; *Birdsong* v. *Ellis,* 62 *Ib.,* 418; Wood on Master & Servant, 241, 246. ·

2. Plaintiff's second instruction ought not to have been given. It leaves the *jury* to say whether the letters constituted the contract, whereas the court should have settled that question. The plaintiff did not deny the letters, but admitted that the letter from Odeneal closed the trade. That letter referred expressly to Henry's letter, and the two manifestly made the contract. Plaintiff's statement to the contrary is self-contradictory. But the jury may have believed him in making up the verdict, instead of following the written contract. For the same reason it was error to modify defendants' third instruction. The court cannot say that this was not prejudicial to defendants. *Solomon* v. *Compress Co.,* 69 Miss., 319.

3. Plaintiff's fifth instruction, which announced that the reasons for discharge given in the letter of February 17, 1891, were insufficient, was clearly on the weight of evidence, and was misleading.

4. By modifying defendants' seventh instruction, so that, instead of announcing that the discharge was lawful if good reasons therefor existed, the court, in effect, declared that defendants must have *had* reasons, and the jury was virtually told that no reasons could be considered good if unknown to Odeneal at the time of the discharge. That is not the law. It is only necessary that reasons *exist.* Wood on Master & Servant, § 119.

*Mayes & Harris,* for appellee.

The refusal of defendants' eighth instruction and modifica-

tion of their third were proper. They assumed *as a fact* that the two letters embodied the contract. As a matter of fact, it may seem pretty plain that Odeneal was right on this point and Henry wrong, but Henry did not alter his testimony that the contract was made by a verbal proposition and Odeneal's letter. There was an issue of fact as to this.

The modification of defendants' seventh instruction was a mere verbal change. If reasons existed, defendants had them. Besides, as presented, it was covered by other instructions already obtained. Again, it went too far in allowing defendants to rely on any grounds for the discharge, although not having reference to the pleadings.

The instructions were liberal in favor of appellants.

Argued orally by *L. Brame* for appellants, and *J. B. Harris* for appellee.

Woods, J., delivered the opinion of the court.

The appellants have no reason to complain of the first instruction given for appellee. Primarily, it was not incumbent on the appellee to satisfy the jury that he had made diligent effort to obtain employment and had failed. If, after his discharge, he had other employment, or, if he could have had, and failed or neglected to secure it, the appellants should have made the proper proofs. Such proof is defensive in its character, and goes to reduce damages assessable against the discharging employer. The burden of proof on this point was on the appellants, and if there was no evidence, as counsel for appellants assert, showing when, if ever, appellee secured other employment, the appellee must not be held to have failed in making out his case. He was only to be required to meet any state of case made by the appellants' evidence which showed that he had been in other employment during the period of the contract of service, or that he might have been. 2 Greenleaf on Evidence, § 261a; *Barker* v. *Insurance Co.*, 24 Wis., 630; *King & Graham* v. *Steiren*,

44 Pa. St., 99; 61 N. Y., 371; Wood's Master & Servant, 238, and cases cited in notes 1 and 2.

The action of the court in giving appellee's second instruction, and in refusing appellants' third instruction, as asked, and in modifying the same, and in refusing the eighth instruction prayed by appellants was erroneous. The contract is clearly contained in appellee's letter of December 11, 1889, and the reply thereto and the acceptance of the terms of employment therein by J. H. Odeneal's letter of December 12, 1889. There was no question of fact as to what the contract was. True, the appellee had sworn that the contract was a verbal one, but his own letter of the eleventh of December, making a distinct proposition for service at $600 per annum, dairy products to be bought or paid for by appellee, and J. H. Odeneal's acceptance of this proposition by letter of next day, as requested in appellee's letter, embodied the contract between the parties. That correspondence brought the minds of the parties together, and the contract was created thereby. The verbal contract which the appellee attempts to establish antedated, by some indeterminate period of time, the written contract found in the two letters referred to, by the appellee's own evidence; and, if it ever had existence, which may well be doubted, it was merged and lost in the subsequent perfect contract in writing. These letters constituted the contract, and the court should have so instructed the jury. The court should further have instructed the jury that, under this contract, appellee was in no event entitled to receive more than $50 per month, less the dairy products consumed by him and his family; and, as these dairy products were shown by appellee to have been worth $10 per month, it is plain that, under the law, as given by the court, the jury was authorized to, and doubtless did, find against appellants the sum of $20 per month more than the written contract warranted.

It must not be forgotten that, by the reluctant evidence of the appellee, these two letters are perfectly shown to contain the contract between the parties; for, at the very close of his

cross-examination, when his letter of the eleventh of December is produced and presented to him, he admitted that it was his letter, written by him and mailed to Odeneal, and that he declined the offer to make any explanation as to the letter, in view of the most extraordinary statements he had made as to the contract not being in writing. The contract was in writing, and the court should have construed it for the jury's guidance. The failure to do so not only may have been effectual in procuring the verdict, but it is reasonably certain that it did, in large measure, produce the result arrived at by the jury.

The fifth instruction given for appellee is open to criticism. We fear the jury may have been misled by it, in the terms employed. It pointed with marked emphasis to the insufficiency of the reasons for appellee's discharge contained in J. H. Odeneal's letter of February 17, 1891, and declared that the reasons given in that letter do not constitute good and sufficient cause for the discharge of the appellee. Some of the reasons for Odeneal's dissatisfaction with the result of appellee's conduct of the dairy are given, but Odeneal expressly declares that "it will do no good to go into the details" of his dissatisfaction. He had previously declared himself dissatisfied with appellee's management, but he did not there specify the grounds of his dissatisfaction of the management. He enters into the reasons for his discontent with the financial results at Sligo, under appellee's supervision, but there is no hint of any reason for the dissatisfaction with appellee's management of the farm, the herd of cattle and other stock. The letter, on its own face, shows that Odeneal uttered his dissatisfaction with appellee's management generally, and declined to go into details, to give reasons. The singling out of a particular piece of evidence, and presenting it prominently to the jury, dissociated from all the other proofs in the case, is apt to mislead, and we fear it may have done so here.

The seventh instruction for appellants should have been given as asked. It stated the principle of law applicable

with clearness and accuracy. If good and sufficient reasons for appellee's discharge existed, the appellants may set them up on trial by way of defense, though they may not have known of them at the time of the discharge. It is of no importance whether the employer state the reasons for his action, in discharging, to the employe; it is of equally small concern whether he really had knowledge of the justifying reasons at the time of the discharge. The all-important question is, did good reason actually exist at the time of the discharge? If the employe has been unfaithful and disregardful of his duty under the contract, he may be discharged, and the employer may defend any action for breach of contract brought by the employe, because of his discharge, by showing good and sufficient causes for the discharge, though ignorant of any or all the facts when the discharge is made. The inquiry on trial. is, had the employe been unfaithful at the time of his discharge? If yea, it would be remarkable, indeed, if he should be permitted in a court of justice to say; "True, I was unfaithful, and merited my discharge, but my employer did not then know of my unfaithfulness, and I must be recompensed in damages for my proper. discharge, because of my employer's ignorace of my misconduct."

. It is not easy to say what the views of the learned court were in interpolating the words complained of in this seventh instruction, unless we assume that the charge, as amended by the court, was designed to inform the jury that, at the time of appellee's discharge, the appellants must have had knowledge of the reasons which would justify their action. If it does not mean this, then the amendments were useless and misleading, for the instruction, as asked, correctly stated that it was the naked existence of good and sufficient reasons which would justify the appellants in discharging appellee. This is the rule as laid down in Addison on Contracts, and in Wood's Law of Master & Servant, and, as seems, accepted generally.

*Reversed and remanded.*