MASONITE CORPORATION *v.* HANDSHOE.

In Banc. Jan. 23, 1950.

No. 37317 (44 So. (2d) 41)

Welch, Cooper & Welch, for appellant.

170

172

**Collins & Collins,** for appellee.

Welch, Cooper & Welch, in reply.

**Roberds, J.**

Handshoe was an employee of Masonite Corporation. His employment began as of January 1, 1948. On June 24, 1948, Masonite discharged him. ■■ ■ Handshoe filed his declaration in this case claiming damages for wrongful discharge. The damages claimed consisted of the balance of his salary accruing after discharge and prior to his being able to obtain other employment, plus $2,622 (less $500 paid him thereon by Masonite), composed of loss in the sale of his home in Sacramento, California; cost of moving himself and family and their house-

hold goods from Sacramento to Laurel, Mississippi, and loss in sale of household furniture and replacement thereof to save expense of transportation. The trial court peremptorily instructed the jury to return a verdict for Handshoe in the sum of $1,000 to recover his unpaid salary maturing to the date of the judgment. That was done and judgment entered for Handshoe for that sum. That action and result necessarily disallowed to Handshoe all the foregoing incidental damages claimed by him. He did not appeal, and, therefore, the correctness of the action of the court in that regard is not before us. However, Masonite did appeal from the judgment as entered, which requires us to pass upon the action of the trial judge in directing the jury to return a verdict for that amount.

Masonite itself requested, but was refused, a peremptory instruction. It says we should enter judgment for it here. Two reasons are urged in support of the contention. ██ We now consider the first reason. It is that the proof shows without contradiction that a condition, or integral part, of the contract of employment was that Handshoe was to have, or obtain, an engineer's license in the State of California; that he did not have or obtain such license and, therefore, Masonite had the right to discharge him. The trial judge took that question from the jury. He himself decided that was not an essential element of the contract. There is little, if any, conflict as to the facts. The doubt arises as to the effect of the undisputed facts. The employment contract rests in some oral conversations but mainly in written communications between the parties in the form of letters and telegrams. However, it is shown without dispute that when Masonite employed Handshoe it knew he did not have an engineer's license in California and it engaged his services regardless of that fact, and no such condition was expressly made a part of the contract. Indeed, it is shown that Masonite agreed to assist Handshoe in obtaining such a license, and it did later do that, without avail. It

is true that it was indicated that Masonite might need the services of an engineer in California but that was uncertain. It depended upon whether Masonite later established a plant in that state, which was indefinite when this contract was made. The most that can be deduced from the undisputed terms of the agreement is that Masonite hoped, or perhaps even expected, when the contract was made, that Handshoe would be able to obtain such license, but neither his limited employment, nor his continuing service, depended upon his being able to do that. Such condition could easily have been made an express part of the contract of employment had the condition been an essential part thereof. We affirm the action of the trial judge in this respect.

Appellant urges, as a second ground in support of its request for a peremptory, that this contract was what is known in law as a permanent contract; that it was without consideration other than the consent of the parties, and, therefore, could be cancelled at the pleasure of the employer. Indeed, Handshoe himself appears uncertain as to the duration of the contract, but says if it be considered a permanent contract as to duration it is valid because the incidental damages claimed by him, as above set out, constituted sufficient consideration to support such a contract. Rape v. Mobile & Ohio Railroad Co., 136 Miss. 38, 100 So. 585, 35 A.L.R. 1422. The trial judge decided that the duration of the contract was one year. We think he was correct in that. The original contract was indefinite as to duration but it is shown, without substantial contradiction, that on January 9, Handshoe informed Masonite that because of the expense resulting from his living in Laurel and his family in Sacramento he could not afford to continue in the employ of Masonite at the agreed salary; whereupon, Masonite suggested that he sell his home in California and remove his family and effects to Laurel, agreeing to pay $500 of the expense of such move, but it would contribute

that amount only upon the condition that Handshoe agree to remain in such employment for at least one year, and Handshoe agreed to do that. The move was made and the $500 paid upon that condition. That, in the opinion of the trial court and in our opinion, modified the original agreement so as to define the duration of the employment to one year from January 1, 1948. That being true, Masonite had no legal right to discharge Handshoe prior to the one year except for justifiable grounds as hereinafter shown. Bass Furnace Co. v. Glasscock, 82 Ala. 452, 2 So. 315, 60 Am. Rep. 748. Therefore, we conclude that the request of Masonite for a peremptory instruction was properly denied.

But the trial judge also himself decided that no grounds existed for discharge of Handshoe. He excluded all evidence upon that question, and took it from the jury. We think that was error. Handshoe was engaged as a "civil engineer for constructural steel and concrete designs for mechanical layouts and map work." In his application for the job he stated that he was qualified in structural design work "as well as mechanical and electrical and map work". Even had there been no express representation as to qualification, the law implied a stipulation by him in entering into the contract of employment that he was competent to perform the work undertaken and had the requisite skill and knowledge to enable him to do so; that he would do the work in a reasonably efficient and careful manner, and would not be guilty of conduct which would seriously and substantially affect adversely his employer's business. This includes refraining from unprovoked insolence or disrespect on his part towards the employer or his superiors. 35 Am. Jur., pg. 473, Section 40; page 475, Section 41, and page 480, Section 48. If the employee has not such skill, or is guilty of such conduct, the employer may properly discharge him. Now, Masonite offered evidence tending to show that the work of Handshoe did not ex-

hibit the skill and was not of the quality of other engineers engaged in similar work and who were not being paid as high a salary as was being paid Handshoe. It offered to prove that in May, 1948, Masonite, in an effort to assist Handshoe in procuring a California license, wrote Mr. Paul E. Jeffers, President of the Board of Registration for Civil and Professional Engineers of California, to which Mr. Jeffers replied, saying Handshoe had been given two oral examinations and could not satisfy the Board as to his ability as a civil engineer; that he failed to report on the date set for a written examination, and had been unsuccessful in attempting to force his registration by the court action; that Lesniak, chief engineer of Masonite, on the afternoon of June 23, called Handshoe into his office to discuss this letter; that Bowen, first assistant to Lesniak, was present; that Handshoe was shown the letter from Jeffers; became very angry; said "Go ahead and fire me"; that Lesniak replied he had simply called him in to discuss the matter; that the witness and Bowen had discussed the question and had come to the conclusion he was not qualified to do the work; that Bowen stated to Handshoe he did not think he was qualified as compared to the other engineers; that Handshoe went into a rage; called Bowen a liar; said he was "going to get Jeffers if it's the last thing I do"; that he was not going to take this "laying down", and, directing his remarks to Lesniak, said, "I'm going to kill you, I'm going to shoot hell out of you"; that Handshoe stalked out of the office, saying, "Now you have got the facts, it is your move now". Appellant offered to prove the foregoing by a number of witnesses. Another witness said Handshoe spoke in very derogatory terms of six of his fellow employees, and said all of these hated him. Handshoe denied all of that. In addition, Masonite offered the deposition of Pecos H. Callahan, Executive Secretary of the State Board of Registration for Civil and Professional Engineers of the State of

California, disclosing from the records of that Board the efforts of Handshoe to obtain a California license and the results of his examination for that purpose, and the deposition of A. G. Stanley, Assistant State Highway Engineer of California, who described the quality of work Handshoe had done as Assistant Bridge Engineer in that State. The depositions were excluded. The foregoing evidence was competent—as bearing upon whether or not Handshoe had the requisite skill to do the work for which he was engaged, and whether or not his conduct, aside from his skill, was sufficiently detrimental to the interest of his employer to justify his discharge. And those were questions for determination by the jury—not by the trial judge—under this record. The letter from Jeffers was competent, not as proof of the facts therein stated, but as explaining the cause and reason for the interview with Handshoe on June 23rd.

The letter discharging Handshoe gave as the specific reason for so doing his inability to obtain a California license. However, the letter did contain these general statements: ''Following our conversation yesterday, we have come to the conclusion that it will be to the best interest of all concerned if you will arrange for employment elsewhere''. It then set out his inability to obtain the license and added ''In view of the above and the fact that Mr. Bowen and I are convinced that you are not especially adapted to detail mechanical work, we wish to advise that your services will no longer be required''. Handshoe says it was not competent to introduce any evidence of any reason for his discharge other than the reasons stated in the letter. Even if the statements in the letter are not broad enough to embrace the questions of his skill and qualifications and his conduct and attitude, that did not preclude introduction of evidence to prove those facts, such testimony being within the scope of defendant's pleadings. If the reasons exist, proof may be made of them. It can be readily under-

stood an employer might not wish to take the risk of stating ex curia derogatory reasons for the discharge. This court, in Odeneal v. Henry, 70 Miss. 172, 12 So. 154, 155, stated the rule in these words:

"The seventh instruction for appellants should have been given as asked. It states the principle of law applicable, with clearness and accuracy. ▮ ▮ If good and sufficient reasons for appellee's discharge existed, the appellants may set them up on trial by way of defense, though they may not have known of them at the time of the discharge. It is of no importance whether the employer · stated the reasons for his action in discharging to the employee. It is of equally small concern whether he really had knowledge of the justifying reason at the time of the discharge. The all-important question is, did good reason actually exist at the time of the discharge? If employee has been unfaithful and disregardful of his duty under the contract, he may be discharged, and the employer may defend any action for breach of contract brought by the employee, because of his discharge, though ignorant of any or all the facts when the discharge is made. The inquiry on trial is, had the employee been unfaithful at the time of the discharge? If yea, it would be remarkable, indeed, if he should be permitted, in a court of justice, to say: 'True, I was unfaithful, and merited my discharge, but my employer did not then know of my unfaithfulness, and I must be recompensed in damages for my proper discharge because of my employer's ignorance of my misconduct.' "

The general rule is set out in 35 Am. Jur., p. 471, Sec. 37, as follows:

"If legal grounds for the dismissal of an employee during the term of his employment exists, no importance attaches to the motive which may have actuated the employer in making the dismissal. It is not necessary that an employer, in order to justify a dismissal, show that in dismissing his employee he in fact acted upon the

proper ground of dismissal. It is sufficient if a ground of dismissal existed at that time. It is not material whether the employer knew of grounds which in fact existed at the time of discharge; notwithstanding his ignorance, he may avail himself thereof, and in the event of his death, his representative has the same right. Nor is it material that the employer assigned another ground as the cause of the employee's dismissal. The employer may justify a dismissal by relying on a ground different from that assigned at the time of the dismissal.''

Reversed and remanded.

**Lee, J.**, took no part in the decision of this case.