820 So.2d 676 (2000)
DIAMONDHEAD COUNTRY CLUB AND PROPERTY OWNERS ASSOCIATION, INC., Appellant,
v.
Paul D. MONTJOY, Appellee.
No. 1998-CA-01254-COA.
Court of Appeals of Mississippi.
July 25, 2000.
Rehearing Denied October 3, 2000.
Certiorari Denied January 18, 2001.
*678 Joseph R. Meadows, Karen J. Young, Meadows, Riley, Koenenn & Teel, Gulfport, Attorneys For Appellant.
Woodrow W. Pringle, III, Gulfport, Attorney For Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
IRVING, J., for the Court:
¶ 1. Paul Montjoy sued Diamondhead Country Club and Property Owners Association, Inc. (POA) for breach of contract and intentional infliction of mental anguish. He also sought prejudgment interest, punitive damages and attorney fees. The trial judge granted a directed verdict on the issue of punitive damages, and the jury rendered a verdict in favor of Montjoy, awarding $54,373.65 in actual damages for breach of contract and $100,000 in compensatory damages for intentional infliction of emotional distress. Thereafter, the trial judge entered judgment against POA for $161,260.97, said judgment representing the amount of the jury verdict plus $6,887.32 in prejudgment interest. Aggrieved, POA appeals and Montjoy cross-appeals. The following issues are recited verbatim from the parties' statement of the issues
1. WHETHER TRIAL COURT ERRED IN GRANTING PLAINTIFF'S JURY INSTRUCTION NO.2 BECAUSE IT WAS PREEMPTORY [SIC] IN NATURE AND CONFLICTED WITH THE OTHER JURY INSTRUCTIONS GIVEN BY THE COURT MAKING IT IMPOSSIBLE FOR THE JURY TO RETURN A FAIR AND IMPARTIAL VERDICT.
2. WHETHER TRIAL COURT ERRED IN GRANTING PLAINTIFF'S JURY INSTRUCTION NO.2 WHICH WAS PREEMPTORY *679 [SIC] IN NATURE AND REQUIRED THE JURY TO FIND FOR THE PLAINTIFF BECAUSE IT IS STATED AS A MATTER OF LAW "PAUL MONTJOY HAS PROVEN THAT HE WAS DENIED HIS DUE PROCESS RIGHTS". THERE WAS NO REQUIREMENT IN THE PLAINTIFF'S EMPLOYMENT CONTRACT OR OTHERWISE WHICH STATED PLAINTIFF HAD THE RIGHT TO RECEIVE WRITTEN NOTICE IN ADVANCE OF REASONS FOR HIS TERMINATION OR HAD A RIGHT TO RESPOND IN WRITING TO THE CHARGES MADE WHICH FORMED A BASIS FOR THE TERMINATION. PAUL MONTHLY WAS NOT A PUBLIC EMPLOYEE WITH AN EXPECTANCY OF CONTINUED EMPLOYMENT WHICH WOULD GIVE HIM ELEVATED PROTECTION UNDER THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES AND MISSISSIPPI CONSTITUTION, ARTICLE THREE, SECTION 14(1890).
3. WHETHER TRIAL COURT ERRED IN GRANTING PLAINTIFF'S JURY INSTRUCTION NO.2 BECAUSE PLAINTIFF'S ORIGINAL COMPLAINT DID NOT SEEK DAMAGES FOR VIOLATION OF DUE PROCESS RIGHTS. THE DEFENDANT WAS NEVER SERVED WITH A COPY OF THE SECOND COMPLAINT BY PLAINTIFF AFTER THE CASE HAD BEEN REMOVED FROM CHANCERY COURT TO CIRCUIT COURT. DEFENSE COUNSEL WAS NEVER GIVEN A COPY OF THE SECOND COMPLAINT OR AGREED TO THE FILING OF THE SECOND COMPLAINT. THE COMPLAINT WAS FILED WITHOUT COURT APPROVAL AND IN VIOLATION OF RULE 15(A) OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE.
4 WHETHER THE TRIAL JUDGE ERRED BY UPHOLDING THE JURY'S AWARD OF $100,000.00 TO THE PLAINTIFF FOR EMOTIONAL DISTRESS DAMAGES.
5. WHETHER THE COURT ERRED IN GRANTING PLAINTIFF'S MOTION IN LIMINE, LIMITING DEFENDANT'S PRESENTATION OF ISSUES RELATING TO THE REASONS FOR PLAINTIFF'S TERMINATION, TO THOSE ISSUES SPECIFICALLY REFERENCED IN THE OFFICIAL MINUTES OF THE DEFENDANTS CORPORATION.
ON CROSS-APPEAL
THE COURT ERRED IN GRANTING THE POA VERDICT ON THE ISSUE OF PUNITIVE DAMAGES. THE FAILURE TO AWARD PUNITIVE DAMAGES BARRED ATTORNEY FEES.
Finding reversible error, we reverse and remand.

FACTS
¶ 2. Paul Montjoy began his contractual employment as the general manager of Diamondhead Country Club and Property Owners Association, Inc. in 1990. His contract was awarded and renewed on an *680 annual basis. The most recent renewal of Montjoy's contract, prior to his termination, occurred on January 5, 1996; the renewed contract was set to expire on May 31, 1997. However, the contract was terminated on July 26, 1996.
¶ 3. The POA elects a board of directors and officers every two years. The officers elected are president, vice-president, secretary and treasurer. The board consists of eleven members, one of whom is the immediate past president. Montjoy, as general manager, reported directly to the president of the board. Montjoy was responsible for the management of all facilities and properties owned by the POA. He was also responsible for hiring and maintaining the necessary staff and consultants in order to accomplish objectives established by the board.
¶ 4. The president reviews the general manager's performance on an annual basis. Under administrations prior to 1996, Montjoy did not receive any reprimands and received positive evaluations. Montjoy's last performance rating was given on January 19, 1996, by Jim Van Norman, the 1995 board president.
¶ 5. On July 24, 1996, Al Cronvich, the 1996 board president, issued a notice to the board of directors convening a special executive meeting on July 26,1996 at 7:00 p.m. The notice stated that the purpose was to review the employment contracts. A few employees were notified that their contracts would be reviewed. No correspondence was sent to Montjoy informing him of the meeting. However, Cronvich testified he gave Montjoy an oral invitation to attend the meeting. Montjoy admitted that he was informed of the meeting by Cronvich but that he did not attend because he had planned to be out of town that weekend. Montjoy was terminated during the meeting. The minutes reflect that his termination was based on the following:
1. Trees were cut and their stumps buried after Bill Smith and Paul Montjoy were told not to bury the stumps.
2. Employees used POA vehicles and accidents occurred. The Board was not advised that the accidents occurred.
3. Larry Satchfield used a POA vehicle and gasoline for private use.
4. The yacht club was not insured.
5. Cronvich asked Montjoy for the yacht club policy, and Montjoy did not produce same.
6. Aluminum cans deposited in garbage receptacles were recycled and no money reported.
7. The lake golf balls were retrieved by Phil Hill, the golf pro, and the funds were not given to the POA.
8. A POA vehicle used by Bill Smith was garaged in Slidell, Louisiana.

ANALYSIS OF THE ISSUES PRESENTED

I. Jury instruction P-2
¶ 6. Issues one, two and three are interrelated in that each of them addresses the propriety of the trial court's granting jury instruction P-2. As will be seen, our resolution of the first two issues renders unnecessary a discussion of issue three. POA argues that jury instruction P-2[1] contains language which is an erroneous statement of the law regarding due process rights of private employees and that the instruction is in conflict with other *681 instructions given by the court in that it peremptorily ordered the jury to bring back a verdict of damages against POA regardless of whether POA proved by a preponderance of the evidence that it had good cause to discharge Montjoy.
¶ 7. This is the pertinent portion of instruction two:
The Court instructs the Jury that Paul Montjoy had a protected property interest in his employment with the Defendant pursuant to the employment contract. As a result, Paul Montjoy could only be removed as General Manager for cause. Under Mississippi law, Paul Montjoy had a right to notice and an opportunity to disprove the charges. This is the right to due process.

In order to establish his claim of denial of due process Paul Montjoy must prove by a preponderance of the evidence:
1. He did not receive written notice of the reasons for his termination.
2. He did not receive an effective opportunity to rebut those reasons. Effective rebuttal means that he must have been given an opportunity to respond in writing to the charges made and to respond orally before the official charge with the responsibility of making the termination decision.
The Court instructs the Jury that as a matter of law Paul Montjoy has proven that he was denied his due process rights.

On the claim of denial of due process, it is your duty to determine what damages, if any, Paul Montjoy is entitled to receive as a result of the denial of due process. (emphasis added).
¶ 8. We agree with POA that private employees in Mississippi have no due process rights except those afforded by contract. The instruction correctly told the jury that Montjoy had a protected property interest in his employment with POA pursuant to the employment contract. It also correctly stated the law that Montjoy could only be terminated for cause prior to the expiration of the contract. However, the instruction went awry when it instructed the jury that under Mississippi law, Montjoy had a due process right to notice and an opportunity to disprove the charges before being terminated. If Montjoy had such right it had to emanate from the contract. Neither the Mississippi Constitution nor the statutory law of this state gives private employees that right.
¶ 9. Under Mississippi law, public employees who have contracts with definite terms have property interests and an expectancy of continued employment and therefore are entitled to the protections of the due process clause of the Fourteenth Amendment to the U.S. Constitution. See Harris v. Canton Separate Pub. Sch. Bd. of Educ., 655 So.2d 898, 901 (Miss.1995); see also Hoffman v. Board of Trustees of East Mississippi Jr. College, 567 So.2d 838, 840 (Miss.1990).
¶ 10. The due process clause of the United States Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV. In Pruett v. Dumas, 914 F.Supp. 133, 137 (N.D.Miss. 1996), the court, in explaining the prerequisite for coming under this constitutional umbrella, noted that "[i]t is evident from this clear language that the threshold requirement of any due process claim, be it substantive or procedural, is a showing that the government deprived the plaintiff of a liberty or property interest. Absent such a demonstration, no right to due process can accrue." In American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 119 *682 S.Ct. 977, 143 L.Ed.2d 130 (1999), the court determined whether private insurers were subject to the constraints of the Fourteenth Amendment. The court stated "that state action requires both an alleged constitutional deprivation `caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible', and that `the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" Id. at 50 (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).
¶ 11. In the case sub judice, the "state actor" threshold was not met. The parties involved in the contract are private actors. State action is not involved or alleged; therefore, the right to due process guaranteed by the Fourteenth Amendment is unavailing on our facts. As stated, Montjoy's right to due process, if any, must emanate from his contract with POA. Montjoy argues that his contract and the employee handbook undergird his contention that he was entitled to due process prior to termination. Our review of the contract belies this assertion.
¶ 12. The contract contains the following provision:
The parties hereto agree to provide written notice of intent to terminate this agreement sixty (60) days prior to the above stated May 31, 1997 termination date. Should either party fail to provide such notice this agreement shall continue under conditions hereinafter set forth on a month to month basis until the required sixty (60) day notice is provided or until renewal is accomplished.
¶ 13. While the quoted provision requires a sixty day pre-termination notice, it is clear from the context that this notice provision relates to the required notice to preclude an automatic renewal of the contract on a month to month basis after expiration of the initial term, and does not provide a notice requirement for a premature termination of the contract for cause.
¶ 14. Although notice of a premature termination for cause is not required by the contract between these parties, the contract could not be terminated prematurely without the existence of good cause at the time of termination. Therefore, the question is: did good cause exist on July 26, 1996 for terminating Montjoy's contract? The reasons given, as set forth in the facts, would support a good cause termination if proven to be true.
¶ 15. We now turn to the issue of whether instruction two is in conflict with other instructions. As stated, POA contends instruction two conflicts with other instructions, including instruction D-12[2] which states:
If you find from a preponderance of the evidence that: (1) the Defendant, Diamondhead Country Club and Property Owners Association, Inc. entered into a contract with the Plaintiff, Paul D. Montjoy, wherein Paul D. Montjoy was employed as the General Manager of the Association from January 5, 1996 through May 31, 1997, and that the Plaintiff stood ready to perform and did perform his obligation under the contract; and (2) the Defendant, Diamondhead Country Club and Property Owners Association, Inc., failed to abide by the contract for terminating the Plaintiff without just cause, then your verdict shall be for the Plaintiff.

*683 However, the Court instructs the jury that under Mississippi law, an employer may discharge an employee, even one hired for a definite term without incurring liability, if just cause exists for terminating the employment contract. It is not necessary for the employer to assign any specific grounds at the time of dismissal and can terminate an employee simply because such grounds existed at the time of discharge. The Defendant in this case, the Diamondhead Country Club and Property Owners Association, Inc., asserts as an affirmative defense that it had grounds to terminate the Plaintiff for cause. If you find from, a preponderance of the evidence in this case that the Plaintiff breached his responsibility to a) be responsible for all the facilities and operations owned and/or controlled by the Association and b) maintaining a staff of employees on behalf of the Association then your verdict shall be for the Defendant. (emphasis added).
¶ 16. Instruction P-2 ordered the jury to bring back a verdict of damages for Montjoy against POA regardless of whether POA proved by a preponderance of the evidence that it had good cause for discharging Montjoy; yet, instruction D-12 told the jury that under Mississippi law an employer may discharge an employee, even one hired for a definite term, without incurring liability if just cause existed for terminating the employment contract. Instruction D-12 further informed the jury that it was not necessary for the employer to assign any specific grounds for dismissal at the time of dismissal. If grounds existed, though not assigned, the employer could, without occurring liability, terminate the employee.
¶ 17. These instructions clearly are in conflict with each other. The latter instructed the jury that Montjoy had a right to advance notice for the reasons of termination while the former stated that it was not necessary to assign any specific grounds at the time of dismissal, provided just cause existed at the time. Also, instruction two is clearly a misstatement of Mississippi law. See Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 66 (Miss.1988) in which the court held that "[a]n employer may discharge an employee (even one hired for a definite term) without incurring liability if just cause exists for terminating the employment contract. It is not necessary for the employer to assign any specific grounds at the time of dismissal, simply that such grounds existed at the time of discharge."
¶ 18. Since the trial judge in jury instruction two found as a matter of law that Montjoy's rights to due process were violated and directed the jury to find damages for that violation, we hold that the jury could have been misled to believe that the reasons offered for termination of Montjoy's contract were merely pretextual and that good cause for termination did not exist. Even if the jury believed POA made a case for good-cause termination, it was still directed by the trial court to return damages for POA's failure to accord due process to Montjoy.
¶ 19. We are not unmindful that the verdict of the jury was returned via a special interrogatory verdict that contained no place in the verdict form to record damages for POA's failure to accord Montjoy the requisite due process found by the trial court to be due him. Nevertheless, we cannot say that the jury simply disregarded the clear instruction of the court to find damages. It is entirely reasonable to assume the jury took into consideration the court's mandate in awarding the damages that it did award, albeit under a different name. Therefore, we reverse on this issue.

*684 II. Intentional infliction of emotional distress

¶ 20. POA argues that there was no evidence presented at trial which suggested that any member of the POA intended to maliciously inflict harm on Montjoy. POA argues that the standard for allowance of damages for intentional infliction of emotional distress is whether POA's behavior was malicious, intentional, wanton, grossly careless, indifferent or reckless. See Leaf River Forest Products, Inc. v. Ferguson, 662 So.2d 648, 659 (Miss.1995). POA further argues that since the trial court denied Montjoy's request for punitive damages based on the fact that there was no evidence which indicated that POA acts were malicious, intentional, willful, or wanton, Montjoy was not entitled to emotional distress damages. We agree.
¶ 21. In order to prevail in a claim for intentional infliction of emotional distress, the alleged conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. It must be regarded as atrocious and utterly intolerable in a civilized community. Brown v. Inter-City Federal Bank for Savings, 738 So.2d 262, 264 (Miss.Ct.App.1999). Liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. Id. It is the nature of the act itself as opposed to the seriousness of the consequences which gives impetus to legal redress. Id. "Furthermore, damages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes." Id. "Only in the most unusual cases does the conduct move out of the `realm of an ordinary employment dispute' into the classification of `extreme and outrageous,' as required for the tort of intentional infliction of emotional distress." Id.
¶ 22. Montjoy testified that after he was informed that his contract was terminated he went into his office to pack his belongings. As he packed, two board members came into the office and watched. Montjoy testified that the two members stated, "[W]e're here to watch you pack your stuff to be sure you don't take anything that belongs to the POA." Afterwards, the head of security escorted Montjoy out of the building in front of the other staff. Montjoy testified that he worked for POA for six years and that Diamondhead was "my baby." He further testified that it was a "big blow" and the firing made him feel cheap. He testified that the firing effected his standing in the community. He stated that he "essentially went home, closed the drapes and went into mourning." Additionally, Montjoy alleged that the POA conspired to fire him. Montjoy presented the testimony of Delores Caldwell, who was a 1996 board member. She testified that she was told by Cronvich and other board members to "look for anything that might be incriminating that could be used as evidence on numerous employees."
¶ 23. It may be that the new board members were, for whatever reasons, dissatisfied with Montjoy's work and wanted to get rid of him, but asking POA board members to scrutinize the job performance of its employees to gather evidence which could be used to weed out employees who the members thought were not performing their jobs satisfactorily does not rise to the requisite level of conduct for the tort of intentional infliction of emotional distress. Simply put, POA's conduct did not rise to the level of extreme and outrageous behavior. Although the approach of the new members of the POA board may have been a little upsetting, no reasonable and fair-minded jury could find from the above-mentioned facts that the POA's conduct arose to the level sufficient to support a *685 finding of intentional infliction of emotional distress. Therefore, we hold the trial judge abused his discretion in not setting aside the jury's award of $100,000 for intentional infliction of emotional distress. The judgment in this regard is reversed and rendered.

III. Motion in Limine
¶ 24. The POA argues that the trial court erred in granting Montjoy's motion in limine. In the motion, Montjoy requested that proof be limited to those acts set forth in the POA's July 26, 1996 board minutes. POA argues that incriminating evidence against Montjoy in existence at the time of his dismissal but not discovered until after his termination was improperly disallowed by the trial judge. This is the disallowed evidence:
1. In September of 1990, the Board adopted a policy that all contracts and leases would be approved and signed off by at least two (2) of the officers of the corporation. Mr. Montjoy ignored this, having had many contracts signed without two signatures of an officer, [sic] including his own employment contract.
2. Mr. Montjoy allowed three (3) supervisors, [sic] to use POA trucks, [sic] with magnetized signs so they could be removed when used by the supervisors for personal use.
3. Mr. Montjoy had no usage control of gasoline at the POA. After Mr. Montjoy's termination, the POA began doing more projects yet used thousands of gallons less of gasoline.
4. The Diamondhead News was to be supported by the sale of ads. There was a $14,000 shortage in payment for same.
5. Mr. Montjoy purchased over a thousand plants and stored them on the property allowing them to die from lack of attention.
6. Without Board approval, Mr. Montjoy gave numerous bonuses, up to $1,500.00 including a $1,000.00 bonus to himself.
7. The POA maintained (as authorized by Mr. Montjoy) and paid for two (2) telephones at the Yacht Club which was not required under the lease agreement. Additionally, POA personnel performed maintenance on equipment, etc. at the Yacht Club which was also not required under the lease agreement.
8. Without Board approval, Mr. Montjoy hired a consultant, gave him an office and when the new Board was elected, had the consultant moved from the premises.
9. Mr. Montjoy made a speech before the Gaming Commission on behalf of the POA, without authority, advising that the POA would welcome the location of a gaming site on or near POA property.
10. Mr. Montjoy abused the expense account by eating meals at the Country Club.
11. The policy of the POA was that buildings could be torn down only with Board approval. $10,0000 was budgeted by the Board to renovate a building, and contrary to the Board's wishes, Mr. Montjoy tore it down, including all plumbing and wiring.
¶ 25. We hold that Masonite Corporation v. Handshoe, 208 Miss. 166, 44 So.2d 41 (1950) compels the conclusion that an employer may present at the trial of a dismissed employee breach of contract action any evidence of the employee's action which would support the employee's dismissal even if the employee's conduct was not known to the employer at the time of the dismissal. In Handshoe,the employer *686 sought to use at trial evidence of post-dismissal misconduct by the dismissed employee. The employer was precluded from utilizing the evidence. On appeal, the Mississippi Supreme Court reversed the trial court's decision disallowing the evidence and held:
The seventh instruction for appellants should have been given as asked. It states the principle of law applicable, with clearness and accuracy. If good and sufficient reasons for appellee's discharge existed, the appellants may set them up on trial by way of defense, tough they may not have known of them at the time of the discharge. It is of no importance whether the employer state the reasons for his action in discharging to the employee. It is of equally small concern whether he really had knowledge of the justifying reason at the time of the discharge. The all-important question is, did good reason actually exist at the time of the discharge? If employee has been unfaithful and disregardful of his duty under the contract, he may be discharged, and the employer may defend any action for breach of contract brought by the employee, because of his discharge, though ignorant of any or all the facts when the discharge is made. The inquiry on trial is, had the employee been unfaithful at the time of the discharge? If yea, it would be remarkable indeed, if he should be permitted, in a court of justice, to say:
"True, I was unfaithful, and merited my discharge, but my employer did not then know of my unfaithfulness, and I must be recompensed in damages for my proper discharge because of my employer's ignorance of my misconduct."
If legal grounds for the dismissal of an employee during the term of his employment exists, no importance attaches to the motive which may have actuated the employer in making the dismissal. It is not necessary that an employer, in order to justify a dismissal, show that in dismissing his employee he in fact acted upon proper ground of dismissal. It is sufficient if a ground of dismissal existed at that time. It is not material whether the employer knew of grounds which in fact existed at the time of discharge; notwithstanding his ignorance, he may avail himself thereof.... Nor is it material that the employer assigned another ground as the cause of the employee's dismissal. The employer may justify a dismissal by relying on a ground different from that assigned at the time of dismissal.

Id. at 184-85, 44 So.2d at 44-45. (emphasis added). We hold that the trial court abused his discretion and should have allowed the POA to introduce the after-acquired evidence.
¶ 26. Montjoy argues that POA did not make a proffer during trial; therefore, the issue was not preserved for the record. Whether this issue is waived, as a separate ground for reversal, on this appeal is academic since we are reversing for other reasons. However, since this issue may recur during a new trial, we address it and hold, on the authority of Handshoe, that POA may introduce any evidence which would be relevant to Montjoy's dismissal, notwithstanding the fact that that evidence was not known to POA at the time of the dismissal.
¶ 27. Montjoy also argues that the allegations were not disclosed in POA's counterclaim in which the POA voluntarily moved to dismiss; therefore, according to Montjoy, POA is prohibited from re-litigating the issues pursuant to the doctrines of res judicata and collateral estoppel. "Generally, four identities must be present before the doctrine of res judicata will be applicable: (1) identity of the subject matter *687 of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made." Dunaway v. W.H. Hopper & Assocs., Inc., 422 So.2d 749, 751 (Miss.1982). Applying the W.H. Hopper & Associates, Inc. test to our fact situation removes any doubt as to whether the dismissal of POA's counterclaim bars POA's defense of Montjoy's breach of contract action. Clearly, it does not. Therefore, we hold that the doctrines of res judicata and collateral estoppel do not preclude POA from presenting evidence on remand of Montjoy's misconduct and dereliction, if any, with respect to his employment with POA. POA's counterclaim alleged breach of contract on the part of Montjoy and sought damages for that breach. Through the counterclaim, POA was seeking damages against Montjoy. The issue presented in the counterclaim is completely different from the defense of Montjoy's action against POA. This argument is without merit.

CROSS-APPEAL
¶ 28. Our resolution of the issues in the direct appeal necessarily resolves the issue raised on Montjoy's cross-appeal. Therefore, there is no need to address this issue further. It is sufficient to say that the trial court did not err in prohibiting the issue of punitive damages from being considered by the jury.
¶ 29. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT AS TO THE AWARD OF ACTUAL DAMAGES AND PREJUDGMENT INTEREST IS REVERSED AND REMANDED AND AS TO THE AWARD OF DAMAGES FOR EMOTIONAL DISTRESS, IS REVERSED AND RENDERED. THE JUDGMENT OF HANCOCK COUNTY CIRCUIT COURT ON CROSS APPEAL IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.
NOTES
[1] The instruction as submitted was numbered P # 2. However, it was given by the court as instruction number 7. Since the parties refer to it in their briefs as instruction number two, we, in order to avoid confusion, will also refer to it as instruction number two.
[2] Instruction D-12 was given by the court as instruction 11, but since the parties refer to it in their briefs as D-12, its original number, we will do likewise to maintain clarity.